UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| EMELI JULIETH ZAMORA NAVA, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | No. 1:26-cv-000146-LEW |
| | ) | |
| DAVID WESLING, *et al.*, | ) | |
| | ) | |
| Respondents | ) | |

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Emeli Julieth Zamora Nava's Petition for Writ of Habeas Corpus (ECF No. 1) and Motion for Temporary Restraining Order (ECF No. 3). Petitioner seeks release from immigration detention. Respondents oppose the Petition. For the following reasons, the Petition and the related Motion for Temporary Restraining Order are granted in part (release is not ordered). [1]

## BACKGROUND

The following background statement is drawn from the Petition, the Return and Response, and exhibits introduced in support of those filings.

Petitioner is a national of Venezuela. She is 25 years of age. According to her Petition, which is verified, Petitioner "crossed into the United States between ports of entry

---

[1] Neither party has requested a hearing. *See also Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (finding that although 28 U.S.C. § 2243 requires the court to "summarily hear and determine the facts," the court need not hold an evidentiary hearing "[w]here the [habeas] petitioner raises only questions of law, or questions regarding the legal implications of undisputed facts") (collecting cases).

without status in January 2025. On January 10, 2025, the Department of Homeland Security initiated removal proceedings in the Immigration Court alleging that she was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) because she did not possess a valid entry document. The notice to appear (ECF No. 1-1) describes Petitioner as an applicant for admission with an address in San Antonio, who applied for admission on January 10, 2025. The initial hearing was set for November 2, 2026, in San Antonio, Texas, and through some process Petitioner was released from custody.[2]

On February 25, 2026, U.S. Border Patrol agents detained Petitioner in Skowhegan, Maine, where she was a passenger in a van whose driver was transporting undocumented aliens to a work site. Petitioner lacks work authorization. At some point following her detention, Petitioner expressed her willingness to voluntarily deport, and on that basis the Government moved to dismiss her Texas removal proceeding. On March 19, 2026, the Immigration Court dismissed the removal proceeding against Petitioner, on the Government's motion, without prejudice. Thereafter, Petitioner filed this habeas corpus petition, informing the Court that she should be released based in part on the fact that there was then no pending removal proceeding.

The Government has since reinstated a removal proceeding. Its new notice to appear (ECF No. 11-4) alleges that Petitioner is inadmissible under both 8 U.S.C. § 1182(a)(6)(A)(i) and § 1182(a)(7)(A)(i)(I). The notice provides a hearing date on October

---

[2] Petitioner states in her Reply that she has been detained since November 17, 2025. Reply at 11. Her Petition does not support this representation. To the contrary, Petitioner was detained on February 25, 2026. The record does not contain any parole documentation. Quite possibly, Petitioner was simply released to settle inside the United States pending a removal proceeding.

8, 2026, in Chelmsford, Massachusetts.  Respondents also issued an arrest warrant and made the initial custody determination to detain Petitioner pending her removal proceeding.  Petitioner is currently detained in Van Buren.

Petitioner asserts that ongoing detention without an opportunity for release on bond violates the Immigration and Nationality Act as well as the Due Process Clause.[3]  She says that because she does not have a criminal record that requires pre-removal detention, she is entitled to a detention hearing before an immigration judge under 8 U.S.C. § 1226. Although Petitioner has not been in the United States for two years, she argues that she is not subject to expedited removal because the Government previously released her and placed her in removal proceedings.  Petitioner relies in part on past practices of immigration officials who indicated by rule that noncitizens illegally present in the United States who first entered without parole "will be eligible for bond and bond redetermination."  62 Fed. Reg. 10312-01, 10323 (U.S. Dep't of Justice, Mar. 6, 1997).

On March 20, 2026, the Court issued an Order to Show Cause (ECF No. 7) that directed the Respondents to address the merits of the Petition. *See* 28 U.S.C. § 2243. In their Response (ECF No. 11), Respondents maintain that Petitioner is subject to mandatory detention pending the completion of reinstated removal proceedings, under what they call the "catchall" provision of 8 U.S.C. § 1225(b)(2), rather than the expedited removal provision in § 1225(b)(1).  However, they argue in the alternative that if 8 U.S.C. § 1226 applies to the exclusion of § 1225(b)(2), then the exercise of discretion to detain is

---

[3] Petitioner also alleges a violation of the Administrative Procedures Act.  However, she has not made any effort to develop that claim based on law or precedent.

appropriate in Petitioner's case and was timely in relation to Petitioner's sudden filing of a habeas corpus petition after agreeing to removal and securing the dismissal of her removal proceedings.

## DISCUSSION

The lawfulness of immigration detention is subject to review by, and unlawful detention is subject to remedy in, a United States District Court under 28 U.S.C. § 2241. The exercise of jurisdiction over this matter is proper because it presents a challenge to the lawfulness of detention and does not otherwise challenge the underlying removal proceedings. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Kong v. United States*, 62 F.4th 608, 614 (1st Cir. 2023) (quoting *Aguilar*, 510 F.3d at 11); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021). The petitioner must prove illegal detention by a preponderance of the evidence. *See Aditya W.H. v. Trump*, 2025 WL 1420131, at *7 (D. Minn. 2025) (collecting authority).

The Immigration and Nationality Act addresses the need for and parameters governing alien detention in two primary places, 8 U.S.C. § 1225 and 8 U.S.C. § 1226. Section 1225 is entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Under subsection (a), "Inspection," "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of [INA Chapter 12] an applicant for admission." 8 U.S.C. § 1225(a)(1). All such aliens "shall be inspected by immigration officers." *Id.* § 1225(a)(3). Under subsection (b), "Inspection of applicants for admission," aliens arriving in the United States are subject to expedited removal without a hearing, if

4

they are determined to be inadmissible under certain INA sections and lack a proper basis to seek asylum in the United States. *Id.* § 1225(b)(1)(A), (B). The remainder, those who are "not clearly and beyond a doubt entitled to be admitted," are subject to removal and ongoing detention pending their removal proceedings. *Id.* § 1225(b)(2)(A).

In contrast to section 1225, section 1226 is entitled "Apprehension and detention of aliens." 8 U.S.C. § 1226. It states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *Id.* § 1226(a). Some aliens subject to section 1226 will have been admitted following inspection under section 1225, while others will have entered the United States surreptitiously, without inspection. Unlike section 1225, section 1226 anticipates a situation in which the Attorney General arrests and detains a noncitizen at liberty in the United States and it authorizes an exercise of discretion in terms of whether the noncitizen will be detained during the pendency of removal proceedings or released on bond or conditional release. *Id.* § 1226(a)(2). The Attorney General's exercise of discretion under § 1226(a)(2) is not subject to judicial review, *id.* § 1226(e), but a refusal to exercise the discretion by not holding a hearing to evaluate a bond or conditional release request is. *Brito v. Garland*, 22 F.4th 240, 244 (1st Cir. 2021); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *see also* 8 C.F.R. § 236.1(c)(8), (d)(1) (2025) (factors are whether the noncitizen poses a danger to property or persons and whether the noncitizen is likely to appear for any future proceeding).

In summary, the INA "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2) [and] also authorizes the

Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289.[4]  Upon detention, non-criminal noncitizens who are illegally present in the United States but effectuated their entry without ever being inspected by an immigration official are subject to arrest and detention when discovered, but they also have the right to a bond/conditional release hearing before an immigration judge if the Government intends to detain them throughout the pendency of removal proceedings.  *Brito*, 22 F.4th at 244.  On the other hand, "arriving" noncitizens who are inspected and found inadmissible at the border or an official point of entry are statutorily subject to ongoing detention without a hearing pending expedited removal.  *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138 (2020).

In many cases, the proper application of the INA is a matter of determining whether the noncitizen in question is subject to either mandatory or discretionary detention based on exclusive application of either § 1225 or § 1226, respectively.  However, it is also possible for both provisions to apply to a given individual.  For example, § 1225 states that it is applicable both to "aliens arriving in the United States" and to "certain other aliens who have not been admitted or paroled."  8 U.S.C. § 1225(b)(1).  A "certain other alien" is one "who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility."  *Id.* § 1225(b)(1)(A)(iii)(II).  This

---

[4] Detention is mandatory for certain "criminal aliens."  8 U.S.C. § 1226(c).

language is significant because traditionally (not currently, according to Respondents) a noncitizen who evades inspection and enters the United States but is later apprehended is considered to fall under § 1226, but that same noncitizen may fall under § 1225 if the noncitizen has not been at liberty in the United States for two years.  Under § 1225(b)(1), such a noncitizen may be subjected to detention pending expedited removal without a hearing if the Attorney General so elects.[5]

For a noncitizen like Petitioner, who is by all appearances inadmissible and who has not been in the United States for two years, and who therefore could be detained and subjected to expedited removal, the INA is a questionable authority for a petition seeking immediate release from detention.  Why Petitioner would perceive an entitlement to immediate release or an expedited hearing in front of an immigration judge, on statutory grounds, really is not at all clear from a review of the language of the INA.

Despite the foregoing, Respondents are not performing an expedited removal without a hearing under section 1225(b)(1), for reasons they have not articulated.  Instead, they have twice scheduled Petitioner for a removal hearing.  They now say that they have exercised arrest authority, but not based on the section 1226(a) factors, only based on their "catchall" mandatory detention interpretation of section 1225(b)(2).  Reliance on section 1225(b)(2) opens up the "seeking admission" controversy that has divided courts around the country.  *See id.* § 1225(b)(2)(A) ("[I]f the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted,

---

[5] The INA also states that a "certain other alien" is not someone previously "admitted or paroled." 8 U.S.C. § 1225(b)(1).  There is no evidence that Petitioner was ever admitted or paroled.

the alien shall be detained for a proceeding under section 1229a of this title.") (emphasis added).  For my own part, I have previously, consistent with my District of Maine colleagues, concurred with that group of district court judges who conclude that noncitizens who have either evasively entered the United States or whom immigration authorities have released into the United States and who have gone about their lives here without pursuing an admitted status are, ordinarily, not proper candidates for mandatory detention for "seeking admission."  *See Amorim Campos v. Stamper*, No. 1:26-cv-00140-LEW, 2026 WL 810619, at *2 & n.3 (D. Me. Mar. 24, 2026) (non-seeking petitioner); *De Los Santos-Baez v. Stamper*, No. 2:26-cv-00022-LEW, 2026 WL 183841, at *2 (D. Me. Jan. 23, 2026) (questioning whether petitioner's wife's I-130 application amounted to seeking admission); *Guaman v. Hladik*, No. 2:25-cv-623-LEW, 2025 WL 3707005, at *2 (D. Me. Dec. 22, 2025) (lacking evidence of seeking admission or an argument for detention based on an expedited removal process); *and compare A.M. v. Joyce*, No. 2:25-cv-00615-LEW, 2025 WL 3706922, at *3 (D. Me. Dec. 22, 2025) (denying habeas relief based on admission-seeking status).

When I consider Petitioner's circumstances, the decisive considerations are (1) that the record does not suggest that Petitioner is seeking admission but rather that she is attempting to prevent or stall her removal and (2) that Respondents are electing to not expedite Petitioner's removal and instead are planning on a six-month or longer detention proceeding through the standard removal process.  Given these circumstances, I conclude that Petitioner's detention requires that someone with authority exercise the initial custody determination and, if appropriate, make an arrest upon a warrant based on the section

8

1226(a) factors (danger to property or persons and flight risk) and not based on the section 1225(b)(2) "catchall" theory of mandatory detention.  In the event that the initial custody determination results in an arrest on a warrant, Petitioner would then be entitled to a redetermination hearing before an immigration judge, on the standard calendar that is employed for those noncitizens subject to the section 1226(a) process.

Petitioner also argues that ongoing detention pending a redetermination hearing (or pending removal) would violate the Due Process Clause.  The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."   U.S. Const. am. V.   The Fifth Amendment applies to aliens facing removal proceedings.  *Reno v. Flores*, 507 U.S. 292, 306 (1993).  In *Hernandez-Lara v. Lyons*, the First Circuit held that "due process requires the government to either (1) prove by clear and convincing evidence that [an alien] poses a danger to the community or (2) prove by the preponderance of the evidence that she poses a flight risk" in order to impose detention throughout the generally lengthy period of removal proceedings, including appeals. 10 F.4th 19, 41 (1st Cir. 2021).  That conclusion rested on a *Mathews v. Eldridge* due process analysis for a non-criminal alien who unlawfully entered the United States without being processed at the border and who remained an internal resident of the United States for roughly five years. *Id.* at 24, 27-35.

Petitioner entered the United States fewer than two years ago.  Her ties to the United States are not well established or persuasively demonstrated in her Petition.  There is cause to anticipate that removal proceedings will be straight forward based on Petitioner's inadmissible status.  Additionally, the *Hernandez Lara* Court did not discuss timing

9

considerations or the appropriateness of detention pending a custody redetermination hearing.  I am not persuaded that the Due Process Clause compels immediate release in this case.  Petitioner evidently anticipated the possibility of such an outcome, because she requested in the alternative "an individualized bond hearing . . . at a time and in a manner that places Petitioner in the same position [s]he would be [in] if not for the Respondents' unlawful conduct."  Pet. at 17.

Based on the foregoing, I conclude that Petitioner's continued detention pending a section 1226(a) initial custody determination and, if necessary, a custody redetermination hearing is consistent with the INA and the Due Process Clause.

## CONCLUSION

For the foregoing reasons, the Petition (ECF No. 1) for a writ of habeas corpus is GRANTED IN PART and DENIED IN PART.  It is HEREBY ORDERED that Respondents will promptly exercise, within 48 hours of this order, their initial custody determination authority, treating Petitioner as a noncitizen detained under 8 U.S.C. § 1226(a) rather than § 1225(b)(2), and either release Petitioner from custody on personal recognizance, subject to reasonable conditions, or else continue detention pursuant to a new administrative warrant.  If detention is continued based on administrative arrest authority, pursuant to a warrant, Respondents will schedule Petitioner for a custody redetermination hearing before an immigration judge in due course, at which hearing the burdens of justifying detention will be placed on Respondents.

The entry on the Motion for Temporary Restraining Order (ECF No. 3) will be marked as a GRANT.[6]

**SO ORDERED.**

Dated this 27th day of March, 2026.

/s/ Lance E. Walker
Chief U.S. District Judge

---

[6] Through her TRO Motion, Petitioner requested that the Court enjoin the removal of Petitioner from the State of Maine "while her Petition is pending." Mot. at 1, 5 (ECF No. 3). The Court effectively awarded that relief through its initial orders in this case (see ECF Nos. 4, 7).

11